Chief Judge Desmond.
After a 53-day trial in General Sessions, a jury convicted defendant of one crime of criminally buying and receiving stolen property as a felony and one crime of criminally concealing and withholding stolen and wrongfully acquired property as a felony (Penal Law, § 1308). The Appellate Division affirmed in a Per Curiam opinion (11 A D 2d 107) in which the court discussed and censured “ Improper conduct on the part of counsel, especially of the public prosecutor”. The court majority did not think, however, that the substantial rights of the defendant were affected by these improprieties. One of the Justices, being of the opinion that “ The improper conduct of the Assistant District Attorney precluded the defendant from obtaining a fair trial”, dissented, voted to grant a new trial and granted defendant leave to appeal to this court.
*269 Defendant makes no attack on the insufficiency of the evidence so it will be enough to summarize it briefly. In January,- 1958 a New York City jewelry store was held up and about $140,000 worth of jewelry stolen. The holdup was planned by one Irving Cohen who procured two other men to carry out the robbery and, with a third confederate, took for himself most .of the pieces of jewelry. According to the prosecution proof Cohen had previously arranged, apparently in order to divert suspicion from himself, to turn in the robbers to the police who caught them in possession of such of the jewelry as Cohen had not taken for himself. Cohen then proceeded to sell some of his part of the loot but gave a ring and pair of earrings to Geraldine Kinnard, a women friend of his, and asked her to try to sell them. Cohen and Geraldine Kinnard as witnesses for the People testified that this defendant bought some 33 pieces of stolen jewelry from Mrs. Kinnard for $15,000 in February, 1958, about 10 days after the robbery. Defendant, who is a jeweler, took the stand to swear that he had met Mrs. Kinnard through a mutual friend and that Mrs. Kinnard asked him to have a ring repaired for her. Later, according to defendant, there were dealings between him, Geraldine Kinnard and Cohen as to jewelry, but he denied that he ever received any of the stolen property.
From beginning to end this was a most extraordinary trial, overlong and marked by many highly improper exchanges between prosecutor and defense counsel which the court could not or at least did not control.' We have never seen a record in which so many clearly improper statements were made by a prosecutor. We will refer to a few of them herein. The People do not deny the number and character of these deviations from proper trial practice but they assert that defense counsel goaded the prosecutor into many of the latter’s improper statements and that in every instance or almost every instance the trial court, by instructions to the jury, saw to it thát the jury disregarded the incidents. Neither of these explanations impresses us as adequate. Over and over again courts have reminded prosecutors that they are something more than mere advocates or partisans and that they represent the People and the People’s justice in presenting proof. We have refused “ to announce a doctrine that the fundamentals of fair trial need not be respected if there is proof in the record to persuade us of defendant’s guilt” *270 (People v. Mleczko, 298 N. Y. 153, 163; People v. Savvides, 1 N Y 2d 554, 558). Other utterances by this court and the United States Supreme Court on the same general subject are People v. Fielding (158 N. Y. 542, 547); People v. Tassiello (300 N. Y. 425); People v. Levan (295 N. Y. 26, 36); People v. Jackson (7 N Y 2d 142); People v. Marks (6 N Y 2d 67); People v. Lovello (1 N Y 2d 436), and Berger v. United States (295 U. S. 78).
We are convinced that the introduction into this record of completely extraneous matters and the quarreling and bandying of insults between counsel, plus the inordinate length of the trial (see People v. Clemente, 8 N Y 2d 1), require a reversal.
We will point to some of the worst episodes. When defendant was being cross-examined, the prosecutor said to defendant in the presence of the jury that the prosecutor was not permitted by the rules of evidence 1 ‘ to state to you now what you are ” (see People v. Jackson, 7 N Y 2d 142, 145, as to this' sort of thing). A motion for mistrial was denied. At other places the Assistant District Attorney referred to defense counsel in • language which included words like ‘ ‘ puke ’ ’ and ‘ ‘ stinks ’ ’. Another motion for mistrial was denied. The prosecutor called defense counsel a liar and on several occasions accused him of 'untruth, befuddlement, entrapment, trickery, etc. As to some of these, motions for mistrial were denied. At one point the court, instead of admonishing the Assistant District Attorney, told defense counsel that he had so conducted himself as to invite the opprobrious remarks and had only himself to blame. At numerous other points the prosecutor .made remarks reflecting on defense counsel’s character and ability.
All of this, however, was mild and innocuous compared to the incredible incident wherein the two lawyers and the court refought the battle of Anzio in the Second World War. The prosecutor, cross-examining one of defendant’s witnesses, asked him whether he had ever been convicted of a crime. The answer was in the negative. Defendant’s counsel in an effort to rehabilitate the witness asked him — and got an affirmative answer to the question—as to whether he was getting a maximum pension by reason of being a wounded veteran of the Anzio campaign. It appeared that the witness had been in the 7th Begi *271 ment, 3d Division. The Assistant District Attorney then began to cross-examine him about military affairs and announced that he himself had a very good personal knowledge of that regiment. For some reason unknown he began to question the witness as to how many battalions there are in a regiment, who were the commanders, etc. He asked the witness about towns and mountain ranges and highways in the Anzio area, how long- he had been in Anzio, who was his company commander and platoon leader, etc., etc. The defense attorney said something that the prosecutor took for a slur on the latter’s valor whereupon the prosecutor listed all the military honors-he himself held. This military symposium went on for 20 pages of the record, at the end of which the prosecuting attorney asked the court to tell the jury to disregard his own statements as to his war services. Defense'objected. There was much more talk on the subject at the end of which the Judge made a statement to the jury in which he minimized the whole episode, saying in effect “ boys will be boys ”. Defense counsel excepted.
These detours from the real issues helped to lengthen the trial and the method of presenting the prosecution’s case lengthened it much more. It was, of course, necessary for the People to trace the allegedly stolen jewelry piece by piece from the jewelry store to defendant, but this process was unduly prolonged with endless repetition of details to the extent that more than 1,000 pages of testimony were taken before there was any discussion of defendant’s part in the transaction.
The court was mild in his reproofs and the jury may have gotten the impression that the Judge considered the prosecution’s tactics to be necessary and proper. As their answer to all this the People point to many improprieties and incitements by defense counsel and suggest that, since the latter was attempting to put reversible error into the record, the court and prosecutor exercised a great deal of restraint. Also, the People remind us, much of the objectionable matter was stricken and there were apologies and curative instructions on other occasions. The People ask us to conclude that defendant got a fair trial despite the circus atmosphere. The trouble is that if we accepted this version we would be accepting the doctrine which we expressly renounced in the Mleczko and Savvides cases (289 N. Y. 153 and *272 1 N Y 2d 554, supra): that the fundamentals of fair trial need not be respected if the proof persuades us of a defendant’s guilt. A decent respect for the courts themselves and for the law itself, aside from defendant’s rights, require that a trial like this be declared a nullity regardless of strong evidence of guilt.
Other errors are charged by appellant but none of them were serious enough to require reversal.
The judgment should he reversed and a new trial ordered.
Judges Dye, Fuld, Froessel, Van Voorhis, Burice and Foster concur.
■Judgment reversed, etc.