Gabrielli, J.
Edward Alicea and his cousin, Fernando Var *603 gas, were tried jointly and convicted of the crimes of manslaughter first degree (Penal Law, § 125.20) and possession of a weapon (Penal Law, § 265.05). The Appellate Division, by divided vote, affirmed Alicea’s convictions, stating that while they neither condoned nor excused the conduct of the Assistant District Attorney, and shared "the feeling of outrage that is implicit in the dissent”, they did "not believe that the totality of incidents” occurring during the trial required a reversal. The dissenter, on the contrary, voted to reverse and grant a new trial on the ground that Alicea was denied his constitutional right to a fair trial, and granted leave to appeal to this court.
The sole issue presented, therefore, is whether the conduct of the trial prosecutor so impaired the development of the factual issues and the presentation of testimony as to jeopardize the fairness of the trial. .
The record amply demonstrates that the prosecutor’s case was built principally upon the testimony of an admitted drug addict, Carlos Delgado, who claimed that his companion, Manuel Lopez, was killed by Alicea with the assistance of Vargas for the reason, as Delgado stated, that Alicea and Vargas desired to retaliate for an attempted robbery of Vargas by the victim and Delgado himself. The defense countered with a claim of self-defense. Both Alicea and Vargas testified and, in totally consistent testimony, explained that Delgado and Lopez, armed with a knife and gun respectively, attacked Vargas as he was walking down a New York City street and that Alicea, having witnessed the attack from a distance, rushed to the scene to assist his cousin in repelling the alleged aggressors. They further testified that during the scuffle which ensued, Vargas shot Lopez with Lopez’s gun in self-defense. Other witnesses were produced who corroborated their testimony.
We reverse and order a new trial.
This case bears an unfortunate resemblance to People v Steinhardt (9 NY2d 267, 269) where it was found that: "From beginning to end this was a most extraordinary trial, overlong and marked by many highly improper exchanges between prosecutor and defense counsel which the court could not or at least did not control. We have never seen a record in which so many clearly improper statements were made by a prosecutor.” There we announced that "[a] decent respect for the courts themselves and for the law itself, aside from defend *604 ant’s rights, require that a trial like this be declared a nullity regardless of strong evidence of guilt” (p 272). (See, also, People v Jackson, 7 NY2d 142; People v Marks, 6 NY2d 67; People v Savvides, 1 NY2d 554; People v Tassiello, 300 NY 425, 430-431; cf. People v Crimmins, 36 NY2d 230, 238.)
This trial, like the one in Steinhardt (supra), was permeated from beginning to end by highly improper exchanges and conduct, the blame for which is largely attributable to the trial assistant. He repeatedly asked objectionable questions and, after objections were sustained, regularly failed to heed the instructions of the court by continuing to ask the same questions again. Furthermore, at various times, he made unwarranted asides, knowingly and intentionally incorporated matters not in evidence into long questions, and vehemently protested the curtailment of his cross-examination by the court, with the apparent intention of prejudicing the defense in the eyes of the jury. Indeed, during the course of the trial, the Justice presiding who, as noted by the dissenter below, is a jurist of long experience and high repute, labeled the prosecutor’s conduct as "unethical”, "ungentlemanly” and "improper”, and, at one point stated:
"The Court: I don’t know on what ground you would take an exception, Mr__[prosecutor], since you were the one who [is] guilty of violating the directions of the Court. I am the one who should take an exception and should do something about these continued, repeated failures on the part of a judicial officer, an officer of the court, a member of the bar, an assistant district attorney, violating the instructions of the Court time after time after time.
"Despite your repeated violations you except to my calling them to your attention when you deliberately four times in a row ask the question that I sustained and excluded the first time. You repeated it three additional times. And that’s the twenty-fifth time in the course of the trial at least that you have done that.”
Typical of the prosecutor’s conduct was his behavior, after having thrice been cautioned at side bar not to further pursue the matter, in persisting to ask a witness whether he knew that Alicea had violated his parole. He did this when, in fact and as is conceded, he knew that the defendant was never convicted of a crime, but had only been adjudicated a youthful offender, a matter which may not be properly put before the jury (People v Cook, 37 NY2d 591; People v Vidal, 26 NY2d 249). *605 Similarly, and further indicative of the prosecutor’s misconduct, it was brought to the court’s attention that he had had contacts with two of the jurors in open court and, further, that one of them had given the District Attorney an "O.K.” sign (described as "Three fingers up and the forefinger and thumb touching”). Although the trial court excused both jurors and substituted two alternates, such intrusions into the protected solemnity of the jury by a prosecutor is inherently suspect, prejudicial to a defendant, and should not be countenanced (see People v Saccomanno, 25 AD2d 528, 529; cf. Remmer v United States, 350 US 377). We conclude, therefore, that there should be a new trial.
Seeking to excuse the improper conduct of the trial assistant, the People argue that defense counsel also engaged in similar conduct, that curative instructions were given by the court in certain instances and that defendant has not demonstrated the likelihood of any prejudice resulting from the conduct complained of. In short, we are asked to hold, as we were urged in Steinhardt (supra), that "defendant got a fair trial despite the circus atmosphere” (9 NY2d, at p 271). This we cannot do. This court will continue to abide by its determination not to accept the proffered doctrine which we have expressly renounced three times: "that the fundamentals of fair trial need not be respected if the proof persuades us of a defendant’s guilt” (People v Steinhardt, 9 NY2d 267, 272, supra; People v Savvides, 1 NY2d 554, supra; People v Mleczko, 298 NY 153). (Cf. People v Crimmins, 36 NY2d 230, 238, supra.)
Criminal trials are to be so conducted that the proof will be legal evidence, unimpaired by intemperate conduct, impertinent counsel and irrelevant asides, all of which obfuscate the development of factual issues and sidetrack the jury from its basic mission of determining the facts relevant to guilt or innocence. Although every trial may not be impeccably conducted and free of some error, we will not tolerate trials where unadulterated unfairness and deceit have become the rule. Evenhanded justice requires more and, as the ultimate guardian of the rights of the People and defendants in the State, we have a right to expect more.
While not dispositive of the issue here, we take note of the Appellate Division determination reversing the Vargas conviction on the ground of similar prosecutorial misconduct in this joint trial. The court below attempted to distinguish this *606 appeal, citing People v Crimmins (36 NY2d 230, supra) and People v Ketchum (35 NY2d 740), upon the stated ground that it appeared that Alicea " 'pulled the trigger’ resulting in the death of Lopez” (People v Vargas, 47 AD2d 869). However, we feel constrained to comment, as we have earlier noted, that the trial testimony as to who shot the gun was disputed and, further, the prosecutor’s misconduct here was far more opprobrious, egregious and pervasive than that found in Ketchum.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed, etc.