THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAFAEL RIOS CRUZ, Appellant.

First Department, April 15, 1976

*Henry Winestine* of counsel *(William E. Hellerstein* and *William J. Gallagher,* attorneys), for appellant.

*Vincent L. Gambale* of counsel *(Mario Merola, District Attorney),* for respondent.

*Per Curiam.* There is sufficient evidence in the record to sustain the guilty verdict returned by the jury. However, because of the conduct of the prosecutor, with an assist by defense counsel to a lesser extent, we are of the unanimous opinion that this defendant was deprived of his constitutional right to a fair trial and the verdict therefore cannot stand.

This court finds that, because of the refusal of the prosecutor to abide by the trial court's instructions, his acts of discourtesy, not only to opposing counsel, but also to the court, his use of leading questions, to the prejudice of the defendant, his continuous clashes with counsel and the court, his use of intemperate language and other improper actions, resulted in depriving the defendant of a fair trial. The over-all conduct of the prosecutor raised many collateral issues which might well have had the effect of distracting the jurors from the issue of guilt or innocence. The situation in this case comes squarely within the language of the Court of Appeals in the cases of *People v Steinhardt* (9 NY2d 267) and *People v Alicea* (37 NY2d 601).

We arrive at our conclusion with reluctance, not because of any doubt as to the propriety of our decision, but, rather, because it is sad and most unfortunate that a trial which lasted seven weeks should result in a nullity, but we have no other choice. This was a simple case to try and should have been completed in far less time than seven weeks, if the prosecutor had observed minimum requirements of advocacy. We are also critical of the defense lawyer, as to his behavior, but we must admit that much of it was by way of reaction to the improprieties of the prosecutor.

The trial was presided over by a truly experienced, courteous, patient and fair jurist, veteran of many criminal trials. But it was simply impossible for him to get the prosecutor to abide by his rulings. We are satisfied that the trial court was reluctant to order a mistrial because of the great amount of time which had already been invested in the proceeding and counsel took advantage of it.

Needless to say, as has been said many times in cases of this kind, it is impossible to be able to recreate the atmosphere which surrounded this trial by this writing. However, we shall call attention to just a few of the many improper incidents which appear throughout the record.

At page 368 of the trial minutes we find the following:

"The Court: Now, please, gentlemen, I have had quite a bit now and don't push me too far. You better conduct yourselves properly here now and take it easy.

"[Prosecutor]: I am going to object to that particular question—answer. If Mr [defense counsel] wants the truth I will open up my file to him and he can see the truth."

Now this, obviously, was an improper statement to have made in the presence of the jury.

At another point, when the court suggested that defense counsel could conduct his examination while seated, because of a leg pain, the prosecutor stated: "[Prosecutor]: I have a pain but it's not in my leg, Judge."

At page 1150:

"The Court: Overruled, let's proceed, gentlemen. But let's not—

"[Prosecutor]: Not 'gentlemen', Judge, let's 'proceed Mr. defense counsel.'

"The Court: Please, Mr. — [prosecutor]. Come on."

Again, on the same page:

"The Court: Mr. — [prosecutor] take it easy. * * *

"The Court: Will you take it easy?"

At pages 2260-2261:

"The Court: * * * Mr. — [prosecutor], would you please resume your place at the counsel table?

"[Prosecutor]: Judge, never have I been so unduly thwarted in my proceeding in cross-examination.

"The Court: Will you please proceed to the counsel table?

"[Prosecutor]: It's almost intolerable.

"The Court: Mr. — [prosecutor], will you be quiet? [Mr. — [prosecutor], as that question began to be posed, it was an argumentative form, and I sustain the objection, and you may rephrase the question."

At page 2266:

"[Prosecutor]: * * * And Judge, I'm going to protest most

vigorously, regardless of personal consequences that fall upon my head, because the People of the State of New York, have a constitutional and unbridled right to confrontation of witnesses. That constitutional right, if your Honor pleases, is being eroded before my very eyes here.

"The Court: Take it easy."

At pages 2267-2268, the court, obviously responding to what the court considered was a criticism levelled at it by the prosecutor, said: "Mr. — [prosecutor], I don't know what that last statement was all about. If you wish to have yourself on record as being qualified to be considered equal or better than Richardson on Evidence and Wigmore, and all the other authorities, that is for you to say with respect to yourself. I take that as a self-serving statement with respect to your own consideration of your own ability. This Court has had experience. This Court will make rulings consistent with this Court's knowledge and this Court's experience with respect to objections to questions that are put. * * * Cross-examination is in the discretion of the Court, to be limited, and that's what the Court has done."

Feeling between the prosecutor and the defense counsel ran so high that, at page 1613, defense counsel, in a conference in the robing room, complained to the court that the prosecutor had run up to the defense counsel, in the corridor, and addressed him as follows: "You son-of-a-bitch, I'm going to have you before a Grand Jury." This was not denied by the prosecutor.

There are many examples of other noncomplimentary exchanges between counsel, such as calling each other buffoon, idiot and equally choice names. Despite the earnest efforts of the court it was next to impossible to control these lawyers, particularly the prosecutor. Perhaps the comment found at page 1614, to the effect that the court's patience in the trial had been nothing less than saintly, best expresses what the court was up against.

Another example of the court's exhortations to counsel to behave is found at page 1981: "The Court: Please. Please. Please, gentlemen." And, at page 1983:

"The Court: I don't want to run a debating society here and I don't want a criticism society either, one criticising the other. That's what I'm not here for."

When certain questions of the prosecutor were objected to

and objection sustained, the prosecutor exclaimed: "[Defense counsel] doesn't want the truth."

At another point in the trial the prosecutor was reprimanded by the court as follows, at page 3099:

"The Court: Mr. — [prosecutor], take it easy, please. This Court will act as a Court, and if an advocate for one side or the other objects to a question, I'm going to rule on it * * *

"I don't want any demonstrations or facial contortions or anything else of that nature; when the Court makes a ruling it makes a ruling." At one time the prosecutor, while engaged in a Bench conference, abruptly left and started to walk away, and, at page 2425, we find the following:

"The Court: Mr. — [prosecutor], will you please attend before this Bench, and don't walk away if we haven't concluded.

"[Prosecutor]: Judge, I can't stay here. The Court: Oh, please."

On another occasion, as shown at pages 2358-2359, we find the following:

"The Court: Gentlemen, please, let's stop this right here and now; stop it right here and now, please. Mr. —[prosecutor], where are you going?

"Prosecutor: Judge, I am not going to subject myself to that in view of your direction.

"The Court: Mr. — [prosecutor], I direct you to stay right in this courtroom.

"Prosecutor: Judge, my health is too important to be subjected to that barrage.

"The Court: Mr. — [prosecutor]; you will conduct yourself as a trial counsel with experience and you will be courteous to this Court and to this jury, and you will follow the Court's directions and instructions or something else may take place and that also goes for [defense counsel] who has, on other occasions, gotten out of control. Now, this is for both of you. Now, I am not going to have this continue any further or consequences will follow."

At pages 2458-2459, the court said: "* * * I don't think you realize it, Mr. — [prosecutor], but the way in which you are conducting the cross-examination, I don't think you are hearing your own voice. * * * And it's irritating and aggravating and it's causing [defense counsel] to recoil and as a conse-

quence, he in making his objection, becomes excited and aroused, and I'm not going to have it. Please, gentlemen."

Following this statement by the court the prosecutor addressed the court in an effort to explain away the court's criticism, but the court then stated, at page 2460: "The Court: Just a moment, sir. What you have stated is self-serving; I don't need it, I can hear, thank God. I can see, thank God, I'm going to preside here and I'm going to make every effort to have an orderly trial. If your remarks are on the record and you wish to continue with this, I'm saying to you, cease, because you are making accusations which reflect upon [defense counsel] and then he is going to stand and place more remarks on the record, and I don't need remarks. I'm taking judicial notice of what I am observing, and that is for the record."

We will cite one more incident which, by itself alone, discloses the discourtesy on the part of the prosecutor towards the court itself. After having sustained an objection by defense counsel, the prosecutor simply failed to abide by the ruling and, instead, persisted in his attitude, at which time the court said, addressing the jury:

"We'll have a recess, ladies and gentlemen. I'm not going to have any attorney look at me in disgust.

"[Prosecutor]: That's not what I meant.

"The Court: He's going to have respect for this Court. And I demand respect. And I'm not going to be looked at as if I'm some rat or something of that nature.

"You sit down and don't say another word, Mr. — [prosecutor]. You're going to have respect for this Court, whether you like it or not. And whether I am an individual or not doesn't make a darn bit of difference. But it makes a difference because I have a robe on here, as a Justice of the Supreme Court of the State of New York, and you're going to treat me with respect, because I carry this mantle. If you look at me here as an individual, that's one thing. But when you look at me in that fashion, with utter disgust and disregard, you are now disrespectful to this robe of justice. And in defense of that, it is my duty to reprimand you as I am on the record right now.

"[Prosecutor]: Can I apologize?

"The Court: You may stand in recess for a few minutes, Mr. Foreman, ladies and gentlemen of the jury." (pp 2669-2670).

We believe that we have cited sufficient incidents which took place at this trial which would clearly indicate that, far from being a trial which one would expect to take place in an American courtroom, this was more in the nature of a bar-room brawl. It is no excuse for the People to indicate that defense counsel was also guilty of impropriety. In *People v Alicea* (37 NY2d 601, 605, *supra)* the court said:

"Seeking to excuse the improper conduct of the trial assistant, the People argue that defense counsel also engaged in similar conduct, that curative instructions were given by the court in certain instances and that defendant has not demonstrated the likelihood of any prejudice resulting from the conduct complained of. In short, we are asked to hold, as we were urged in *Steinhardt* [9 NY2d 267] that 'defendant got a fair trial despite the circus atmosphere' (9 NY2d, at p 271). This we cannot do. This court will continue to abide by its determination not to accept the proffered doctrine which we have expressly renounced three times: 'that the fundamentals of fair trial need not be respected if the proof persuades us of a defendant's guilt.' * * *

"Criminal trials are to be so conducted that the proof will be legal evidence, unimpaired by intemperate conduct, impertinent counsel and irrelevant asides, all of which obfuscate the development of factual issues and sidetrack the jury from its basic mission of determining the facts relevant to guilt or innocence."

This prosecutor, unfortunately, forgot certain fundamental rules which should have governed his behavior. It has long been settled that a prosecutor is a quasi-judicial officer, who represents the People of the State, and is presumed to act impartially, solely in the interest of justice. *(People v Fielding,* 158 NY 542.)

In *People v Lombard* (4 AD2d 666, 671) this court said: "The District Attorney is an advocate, but, at the same time, he is a quasi-judicial official *(People v Fielding,* 158 N. Y. 542) and his primary duty is to see that justice is done and the rights of all —defendants included—are safeguarded. There is a positive obligation on his part to see that a trial is fairly conducted [citing case]. He should be as zealous in protecting the record against reversible error as he is to present his case as forcefully as possible."

We also note that, even if defendant's counsel felt justifiably provoked, much of his conduct was also improper and some of

his language inexcusable and unfit for a courtroom. We trust that this observation will serve to convince him of the need for restraint in his future court work.

Accordingly, because of the denial to the defendant of his constitutional right to a fair trial, the conviction should be reversed on the law and in the interests of justice and a new trial ordered.

KUPFERMAN, J. P., MURPHY, SILVERMAN, CAPOZZOLI and LANE, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on April 26, 1974, unanimously reversed, on the law and in the interests of justice, and a new trial directed.