■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DENZIL COLE, Appellant. Judgment, Supreme Court, Bronx County, rendered September 10, 1974, convicting the defendant after a jury trial of the crimes of criminal sale of a dangerous drug in the third degree (three separate counts), affirmed. The issues presented at trial involved testing of the credibility of the various witnesses, and those issues were correctly resolved by the members of the jury as triers of the facts. We find that neither the prosecutor's cross-examination of the defendant nor his summation to the jury was improper. The cross-examination conducted by the prosecutor relating to a prior robbery was geared to impeachment of the credibility of the defendant. While these acts did not result in a criminal conviction, it is beyond cavil that inquiry about prior immoral acts of a person is within the bounds of proper cross-examination, and the prosecutor is not precluded from further examination by a negative response of the defendant *(People v Sorge,* 301 NY 198, 200). We do not find that the cross-examination was conducted in bad faith or that it was oriented to reveal defendant's propensity to deal in dangerous drugs (cf. *People v McKinney,* 24 NY2d 180). As to the alleged improper comments in the summation of the prosecutor, we merely note that he was in essence responding to the summation of the defense counsel by stating that the police personnel who testified had no motive to lie. Any other comments in the prosecutor's summation which may have been improper were at best harmless error and do not warrant granting a new trial *(People v Crimmins,* 36 NY2d 230). Concur—Kupferman, J. P., Lupiano, Silverman and Lane, JJ; Murphy, J., dissents in the following memorandum: Because of the numerous improper and highly prejudicial statements by the prosecutor, during the trial and on summation, defendant was denied a fair trial and his conviction should, therefore,

not be sustained. On three separate days in June, 1973, defendant allegedly sold an aggregate of 1½ ounces of cocaine to an undercover officer for $1,000. He was indicted for these transactions in September and October, 1973, and arrested, pursuant to a warrant, on January 4, 1974, over six months after they were consummated. Defendant testified in his own behalf and told the jury he was in Miami, Florida, between June 1, 1973 and July 6, 1973. If the sole question presented was one of credibility, I would join my colleagues in refusing to set aside the jury's resolution of the conflicting testimony. However, the defendant was entitled to have the jury make such assessment without distraction by the prosecutor's introduction of highly inflammatory and prejudicial statements unrelated to the central issue. *(People v Cruz,* 52 AD2d 1.) For example, during cross-examination of the defendant the prosecutor asked defendant whether or not it was *"a fact* that on June 5, 1970, at 2 o'clock in the morning you did approach a person, the complainant, produced a revolver and demand *[sic]* jewelry as a result, and steal *[sic]* jewelry valued at $250 from this person, and this happened in Brooklyn on June 5, 1970? Is that *a fact?"* (Emphasis added.) Defendant replied, "No". Before and after the question he explained that there was an incident involving his girlfriend which resulted in the police being called after which the matter was "settled". Despite the absence of any evidence of a prior robbery conviction, the prosecutor clearly sought to create such impression in the minds of the jurors. Defendant admitted to a conviction for loitering and to paying a $25 fine. The prosecutor then questioned the defendant about "the underlying circumstances." After permitting some inquiry into this area, on objection of defense counsel the court instructed the prosecutor "not to go any further." Despite such admonition, and immediately thereafter, the following occurred: "Q. Mr. Cole, isn't it a fact that on January 21st, 1972—this is for the charge you pleaded to, you had in your possession one ounce of marijuana? Isn't that right? A. No. Q. No? All right. A. I got a receipt for $25. I paid that myself. Q. No. But you pleaded guilty to a lesser count. Isn't that the truth Mr. Cole? [Defense counsel]: I object your Honor. The court: The objection to that is sustained. The jury will disregard it. [Defense counsel]: And I move for a mistrial also. The court: Overruled." The apparent lack of good faith in questioning defendant about an armed robbery which may never have occurred and the deliberate injection of the reference to marijuana, after being told to discontinue any such inquiry, had no purpose other than to show that defendant was of a criminal bent with a propensity to commit crimes involving drugs. The improper impact of such questions on a jury is manifest. A more egregious error was committed by the prosecutor in summation when he advised the jury that to acquit the defendant they would have to necessarily find that three police officers (only one of whom was an eyewitness to the crime) and two police chemists conspired to commit perjury and risked loss of job, pension and freedom if such was the case. Such inflammatory, prejudicial and unfair comment could only mislead and confuse a jury presented with only one simple issue, i.e., was there a mistaken identification in this case? Further reversible error was committed when the prosecutor, during summation, pleaded for a conviction as a lesson to the community, inferred, without evidentiary support, that defendant was involved in a large scale drug operation referred to several times as "Operation 364" and suggested that appellant might have killed the undercover officer if he knew his true identity. Although some defense objections to improper questions and comments were sustained and some curative instructions given, I find the errors committed too numerous and prejudicial

to be disregarded as harmless. Defendant may indeed be guilty as charged; but such conclusion can only be reached after a fair trial. In my view, this defendant did not receive one. Accordingly, I vote to reverse the conviction on appeal and direct a retrial.