■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS CICCHETTI, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered January 15, 1976, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. Judgment affirmed. No opinion. Hopkins, Acting P. J., Martuscello, Cohalan and Rabin, JJ., concur; Titone, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum: Defendant Thomas Cicchetti was convicted of murder in the second degree in the death of one Frank Nocera, who was also referred to at times during the trial as "Frankie Skid", and of criminal possession of a weapon in the second degree. He was accused of having inflicted fatal gunshot wounds upon Nocera during an altercation in a bar. In my opinion the conduct of the trial prosecutor throughout the trial was so prejudicial and outrageous as to render the resulting conviction a monstrous injustice. In *People v Crimmins* (36 NY2d 230, 238) the Court of Appeals, in discussing the right of an accused to a fair trial, set forth the following explicit caveat: "Not only the individual defendant but the public at large is entitled to assurance that there shall be full observance and enforcement of the cardinal right of a defendant to a fair trial. The appellate courts have an overriding responsibility, never to be eschewed or lightly to be laid aside, to give that assurance. So, if in any instance, an appellate court concludes that there has been * * * such *misconduct of a prosecutor* * * * or such other wrongs as to have operated to deny any individual defendant his fundamental right to a fair trial, the reviewing court must reverse the conviction and grant a new trial, quite without regard to any evaluation as to whether the errors contributed to the defendant's conviction. *The right to a fair trial is self-standing and proof of guilt, however overwhelming,* can never be permitted *to negate this right*" (emphasis supplied). Those words were never more applicable than they are to the case at bar. The trial, from the prosecutor's opening statement to the conclusion, was permeated with the prosecutor's intemperate, prejudicial and inflammatory remarks. Contrary to the assertion of the People on this appeal, no remarks of defense counsel approached the insinuations and allegations made by the trial prosecutor. Typical of the prosecutor's untoward conduct was a remark made in his opening statement that Nocera, shortly before he died, may have said something to another person "which is inadmissible so I won't tell you about it." During the trial and in his summation, he mentioned at least seven times that the victim had either one half or one third of a foot missing. While the condition of decedent's foot may have certain probative value on the likelihood of his having been the aggressor in the melee, remarks about the foot, such as those contained in the following questions asked defendant by the prosecutor, were irrelevant, inflammatory and calculated to gain the jurors' sympa-

thy: "Did you have any difficulty pushing a man with a third of his foot missing?", and "Did your brother help you in any way to disarm this man with a third of a foot missing?" On at least three occasions the prosecutor improperly referred to unrelated matter, to wit, defendant's brother belonging to motorcycle organizations and to the "Hells Angels" (cf. *People v Philpot*, 50 AD2d 822; *People v Lowrance*, 50 AD2d 769). The prosecutor, on a number of occasions, also used the word "bum" or "bums" to describe either defendant or those with him at the bar at the time of the occurrence. During his summation, the prosecutor intimated that the procedural and chronological order of proof was accidental and afforded defendant the opportunity to lie. The prosecutor stated: "The way this trial has worked out, the People's witnesses, all seven of them testified on October 31st, 1975, and the People rested and there was a weekend * * * the defendant took the stand with the benefit of tailoring his testimony to the evidence." As the prosecutor is well aware, CPL 260.30, and not "the way this trial has worked out", governs, *inter alia,* the order of proof. His remark was calculated to make it appear to the jury that defendant took advantage of a lucky break to fabricate testimony. In my opinion those and other prejudicial and patently improper remarks by the prosecutor were so cumulative and pervasive, and so permeated the trial, that the trial itself should be declared a nullity regardless of the fact that there may be strong evidence of guilt present in the record (see *People v Alicea*, 37 NY2d 601, 603–606). As the court stated in *Alicea* (p 605): "Criminal trials are to be so conducted that the proof will be legal evidence, unimpaired by intemperate conduct, impertinent counsel and irrelevant asides, all of which obfuscate the development of factual issues and sidetrack the jury from its basic mission of determining the facts relevant to guilt or innocence." In the instant case, it is obvious that the prosecutor, although guardian of the rights of the People and the defendant, not only failed to present the People's evidence fairly, cogently and persuasively, but rather, as in too many other criminal cases reaching appellate courts in the recent past, seemed to devote his energies on having the jurors ally themselves with him as 12 avenging angels. I, therefore, vote to reverse the judgment and order a new trial.