■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VINCENT GALLOWAY, Appellant.—Judgment, Supreme Court, Bronx County, rendered April 10, 1978, after a jury trial, convicting defendant of grand larceny in the third degree, affirmed. Proof of guilt on this record was overwhelming at trial. The victim of the mugging by three men unequivocally identified defendant as one of the participants whom she observed in the light of a street lamp when she looked up, having been thrown to the ground. A passerby attracted by her screams opted for the role of "Good Samaritan" rather than remain in isolation and merely be an onlooker to the distress of a fellow citizen. He engaged in hot pursuit of the fleeing trio and lost sight of them for a "split second" as they rounded a corner in their endeavor to escape. He subsequently saw defendant leave his two accomplices and crawl into the bushes in a courtyard. This effort to escape was observed by the "Good Samaritan" in his continuous hot pursuit and he confronted defendant who recognized him as a former schoolmate. Defendant implored his former schoolmate to let him go, but the latter rejected the request and called to the victim who now arrived at the scene of the confrontation. These eyewitness observations, coupled with the swift apprehension of defendant, the contemporaneous on-the-scene identification by the victim, the defendant's attempt to appeal to his acquaintanceship with the bystander who pursued and apprehended him, all point unerringly to defendant's guilt. Indeed, even defendant's defense that he was merely walking home from a store where he bought bananas when he heard shots and jumped into the bushes to avoid involvement, circumstantially aided the People's case in that the victim testified that one of her assailants dropped

bananas at the scene of the robbery which her young child picked up. The dissent's view insofar as it predicates reversal on improper bolstering of testimony, citing *People v Trowbridge* (305 NY 471), is not compelling because on this record the error was harmless (see *People v Burgess,* 66 AD2d 667). Further, although the dissenters acknowledge that defense counsel, confronted with a very strong case by the People, chose to engage in blatant improper conduct aimed at eliciting error, a mistrial, or as here, a claimed deprivation of a fair trial, rewards such conduct because the prosecutor while initially impervious to such tactics, lost his "cool" and endeavored to retort in kind. We have read the entire trial transcript and are satisfied that although such improper conduct was engaged in, and although it pervaded much of the trial, it did not reach that critical all-pervasive level so as to render the trial a mockery or a farce and deprive the defendant of his right to a fair trial. No trial is perfect. Where, as here, there is overwhelming proof of guilt, where cautionary instructions were repeatedly given by the trial court, where the defense counsel was not only abusive, but initially engaged in such conduct "baiting" the prosecutor who, unfortunately, did not continue to refuse to engage in similar conduct, justice and common sense require that we conclude that the prosecutor's conduct did not rise to the necessary level of egregious conduct as to deprive defendant of a fair trial (see *People v Johnson,* 47 NY2d 785, 787; *People v Arce,* 42 NY2d 179, 189-191; cf. *People v Alicea,* 37 NY2d 601). The record further discloses in terms of time span, requests and inquiry by the jury and related incidentals a conscientious and serious deliverable process by the jury after the case was submitted to them. These latter circumstances relevant to the jury deliberation are strongly indicative that the jury was not swayed by the improper conduct of counsel occurring from time to time, but under the court's guidance essayed to responsibly fulfill this obligation of citizenship. Concur—Sullivan, J. P., Ross and Lupiano, JJ.; Silverman and Bloom, JJ., dissent in separate memoranda as follows.

Silverman, J. (dissenting). I agree with what Justice Bloom has said except that I would not reverse for the *Trowbridge* error alone. (See *People v Burgess,* 66 AD2d 667.)

Bloom, J. (dissenting). Defendant was indicted for robbery in the second degree and grand larceny in the third degree. He was acquitted on the robbery charge, found guilty of the count charging grand larceny in the third degree and sentenced to five years' probation and a fine of $100. On January 4, 1976 Magda Calero, the complainant, entered the courtyard separating the buildings 731-751 East 161st Street, Bronx, with her small son. As the two were walking toward 751 East 161st, three black youths beset her, knocking her to the ground and grabbing her purse. Her screams attracted the attention of Jose Cruz, who turned to see three men running. While he could not identify any of the attackers, he came upon defendant hiding behind a hedge and stood guard over him until the police came. Prior to the arrival of the police Cruz called to Calero, telling her that he "had one of them". Calero came over, identified defendant as one of the robbers and left to take the child, who had begun to cry, to her apartment. The police, who had been alerted by a neighbor with a call of "shots fired", arrived, searched Cruz and defendant and found no weapon on either of them. Defendant and Cruz were then taken into the hallway of 751 East 161st Street. Moments later Calero appeared in the hallway. Obviously under great emotional stress, she identified defendant. Defendant denied that he had participated in the purse snatch. He testified that he was

returning from a fruit store where he had gone to buy bananas. As he passed the area of the robbery he heard shots. Since on a prior occasion he had been wounded as a bystander to a shootout, he immediately ducked behind the hedges. It is undisputed that Cruz was facing away from the robbery when it occurred. Only after his attention had been drawn to the scene by Calero's screams did he see three men in flight. Nevertheless, both he and Police Officer Feliciano were permitted, without objection, to testify to Calero's identification of defendant. That testimony was clearly inadmissible under *People v Trowbridge* (305 NY 471) (see, also, *People v Annis,* 48 AD2d 622; *People v Otero,* 45 AD2d 952), for its purpose was to convey to the jury the notion that defendant had been identified by three witnesses to the robbery whereas, in fact, he had been identified by one only—Calero—under suggestive circumstances, while in a highly emotional state. Of greater importance was the manner in which counsel conducted themselves throughout the trial. The stage was set by defense counsel in his opening statement. Throughout that statement he referred to Cruz as "this sixteen year old punk" and as a "vigilante". Initially this drew a comparatively mild response from the prosecutor. He took the occasion to voice his objections, followed by short speeches. However, as the trial progressed, the prosecutor was determined not to be outdone in the use of vitriol. His acid comments were directed at the court as well as at his adversary. Soon, the trial degenerated into a personal vendetta between counsel. Lost sight of completely in the battle were the rights of the complainant and the accused. Try as it did, the court was unable to control the proceedings. In the face of this pervasive conduct the proceedings bore little resemblance to a fair trial (*People v Alicea,* 37 NY2d 601; *People v Bussey,* 62 AD2d 200). In the circumstances, we think a retrial is mandated. While it would be presumptuous for a minority of a single Bench to endeavor to set policy for the court, we deem it appropriate to note that some members of this Bench are of the opinion that hereafter egregious conduct of the kind here displayed by counsel ought to be referred to the Departmental Disciplinary Committee for appropriate action. Accordingly, I would reverse and remand for a new trial.