■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT MILLER, Appellant. [643 NYS2d 74] —Judgment, Supreme Court, New York County (Bruce Allen, J.), rendered February 24, 1994, convicting defendant, after jury trial, of robbery in the second degree, and sentencing him to a prison term of from 2 to 6 years, is affirmed.

It is clear that the People have a right to cross-examine a witness regarding his failure to come forward with exculpatory information prior to trial. In order to lay a proper foundation for such questioning, the People must show circumstances "in which the natural impulse of a person possessing exculpatory information would be to come forward at the earliest possible moment in order to forestall the mistaken prosecution of a friend or loved one" (*People v Dawson*, 50 NY2d 311, 318; *People v Vasquez*, 216 AD2d 176, 177, *lv granted* 86 NY2d 847).

In the matter before us, the prosecutor laid the proper foundation for such inquiry. At the time of defendant's arrest, defendant's companions, aware that defendant was being charged with a crime that occurred minutes before, were silent, although they now claim to have been in a club with defen-

dant during the time period in question. Indeed, one of the alibi witnesses testified that he had not immediately come forward with the alibi because he had no idea why defendant was being arrested, yet he told his companions "[d]on't say nothing" when the officers stopped them. In addition, the alibi witnesses made no protestations at the police station concerning their evening out with defendant, asserting none of the officers would speak with them.

Further, we disagree with the dissent's conclusion that the People thwarted communication with the defendant's alibi witnesses. The Assistant District Attorney ("ADA") merely explained to the potential witnesses that he would not speak to them with defense counsel present, as he prudently felt this presented a conflict of interest. The ADA, however, offered to speak to defendant's companions alone, or at a future time after they had secured their own counsel. They never returned.

In view of the foregoing, since the ADA established that the witnesses knew of the robbery charge before trial, were sufficiently knowledgeable as to how to relay this information to the proper authorities, had been friendly with defendant, and were aware that they possessed exculpatory information, a proper foundation was laid for cross-examination (*People v Dawson, supra,* at 321; *People v Jackson,* 214 AD2d 475, 476, *lv denied* 86 NY2d 796). Concur—Sullivan, J. P., Nardelli, Williams and Tom, JJ.

Rosenberger, J., dissents in a memorandum as follows: Given that it was the People who frustrated communication with the defendant's alibi witnesses, it was an abuse of the trial court's discretion to have allowed impeachment based upon their alleged failure to come forward to exculpate the defendant, and to subsequently allow the use of such impeachment to insinuate on summation that the defendant's alibi was contrived (*People v Dawson,* 50 NY2d 311).

*People v Dawson* provides that an alibi witness's failure to come forward with exculpatory information at the earliest opportunity can be used to impeach trial testimony (50 NY2d 311, 322-323, *supra*). In conducting cross-examination pursuant to *Dawson,* however, the People have "an obligation to rise above mere partisan advocacy and to conduct the trial in a manner consistent with the defendant's due process rights" (*supra,* at 323; *see, People v Steinhardt,* 9 NY2d 267; *People v Fielding,* 158 NY 542), pursuing such questioning only where there is a good faith basis to do so (*supra,* at 323).

Impeachment here was improper because the witnesses' trial testimony was not inconsistent with their prior conduct. The

alibi witnesses testified that at the time the defendant was arrested, they did not know what he was accused of having done. They went directly to the police station after the defendant-appellant was arrested, and made an attempt to speak with officers there, but the police refused to speak with them. In addition, prior to the first trial on this indictment, defense counsel filed an alibi notice naming these witnesses, and they again went to speak with a prosecutor, and it was that prosecutor who ended the meeting when the witnesses insisted that the defendant's attorney remain present for the interview. Given their role in prohibiting communication, the People should have been precluded from pursuing a line of cross-examination questioning the veracity of these witnesses for failing to come forward with exculpatory information. Even the trial court noted that "it [strikes] me as somewhat unseemly when you, the questioner, put questions to witnesses about your own conduct".

Given the equivocal nature of the complainant's identification, the dearth of supporting evidence inculpating the defendant, and the fact that an alibi was the core of the defense's case, the error requires reversal and remand for a new trial (*People v Ayala*, 75 NY2d 422, 431; *People v Crimmins*, 36 NY2d 230, 242). The People's case was based upon the complainant's identification of the defendant as one of four men who robbed him at approximately 2:30 A.M. Although the alleged robbers had recently been passengers in the complainant's taxi, he could not identify the other three people who were with the defendant at the time of his arrest as participants in the crime. He also testified that he could not tell if the man who robbed him was black or Hispanic; he did not know the approximate age of the robbers; and, he failed to mention that the defendant had facial hair and tattoos. The defendant and his three friends were all frisked upon the defendant's arrest, but neither the weapon allegedly used in the robbery nor the waist pouch containing the complainant's money was recovered. The first trial on the indictment resulted in a jury disagreement, and the alibi provided by the witnesses was the core of the defense case. Because there is a reasonable probability that the improper cross-examination of the defendant's alibi witnesses contributed to the conviction (*People v Crimmins, supra*, at 242), I would reverse the judgment of conviction and remand the case for a new trial.