■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRIAN HENDERSON, Appellant. [855 NYS2d 490]—

Judgment, Supreme Court, Bronx County (Robert G. Seewald, J.), rendered May 9, 2005, convicting defendant, after a jury trial, of attempted assault in the first degree, and sentencing him, as a persistent violent felony offender, to a term of 16 years to life, and order, same court and Justice, entered March 8, 2006, which denied defendant's CPL 440.10 motion to vacate the judgment, affirmed.

The verdict was based on more than legally sufficient evidence, and was not against the weight of the evidence. Defendant was convicted on the basis of the eyewitness testimony of two correction officers who both observed him stabbing a fellow inmate. The jury had substantial grounds to credit these officers, and to reject the testimony of defendant's witness, the inmate-victim who vaguely claimed that the attack was by three Hispanic inmates whom he could not identify, and asserted that defendant had nothing to do with the attack.

We agree with the trial court that the People's belated disclosure of Officer Sheridan's report, though a *Rosario* violation (*see People v Rosario*, 9 NY2d 286 [1961], *cert denied* 368 US 866 [1961]), does not require reversal, since we perceive no reasonable possibility that timely disclosure would have altered the verdict (*see People v Vilardi*, 76 NY2d 67, 77 [1990]).

Defendant's right to a fair trial was not violated by the prosecutor's cross-examination of the inmate-victim or by remarks made in the course of summation. The questions and comments relating to the victim's failure to identify defendant as the perpetrator were proper attacks on his credibility.

The cases relied upon by defendant which involve prosecutors improperly accusing defendants of intimidating witnesses in the absence of evidentiary support (*see e.g. People v Lantigua*, 228 AD2d 213, 219 [1996]; *People v Norton*, 164 AD2d 343, 356 [1990], *affd* 79 NY2d 808 [1991]) are inapposite here. A limited inquiry into whether the inmate-victim might have been subjected to intimidation or might legitimately expect reprisal was an appropriate subject of cross-examination, and, to the extent included in the prosecutor's summation, was also properly responsive to the defense's rhetorical question, "Why in a room full of inmates, did not one inmate come forward to say that Brian Henderson had anything to do with this?" Nor was improper prejudice likely from the prosecutor's question as to the term commonly used for inmates who testify against other inmates. Any instances of improper remarks by the prosecutor were minor, isolated, and harmless.

Cases in which it was held prejudicial to inform the jury of the defendant's incarcerated status (*see e.g. People v Randolph*, 18 AD3d 1013 [2005]) are inapposite where the jury was necessarily aware from the outset that the case concerned an assault among inmates at the Rikers Island detention facility (*see People v Wong*, 163 AD2d 738 [1990], *lv denied* 76 NY2d 992 [1990]).

Defendant's remaining contentions, including those contained in his pro se supplemental brief, are without merit. Concur—Tom, J.P., Saxe, Nardelli and Sweeny, JJ.

Catterson, J., dissents in a memorandum as follows: Because I believe the People's unfounded comments and insinuations about the intimidation of the victim substantially prejudiced the defendant, I would reverse and remand for a new trial. I, therefore, respectfully dissent.

This is a case where the People ignored the victim's testimony that the defendant was not his assailant, and suggested, without any evidentiary basis, that the victim was lying because he had been intimidated by the defendant. When the victim denied any intimidation, the People then argued that the victim's denials meant that he had, in fact, been intimidated. The victim's denials therefore became the People's evidence-in-chief on the issue of witness intimidation. Indeed, the People offered no evidence whatsoever that the defendant intimidated the victim.

On March 17, 2003, a fight broke out among three inmates at Rikers Island causing injury to one of the inmates, Pablo Pas-

trana.[1] The defendant, Brian Henderson, was subsequently charged with attempted assault in the first degree.

During trial, conflicting testimony was offered on the issue of whether the defendant was correctly identified as the assailant. Two correction officers testified that they were standing 20 to 30 feet away[2] and witnessed the defendant pull out a metal object and swing it at the victim. The victim, however, testified that the correction officers had improperly "fingered" the defendant as the culprit and that he was assaulted "by some Spanish brother."[3]

Throughout the trial, the People attacked the *victim's* credibility by suggesting that he had been intimidated into testifying on behalf of the defendant. The People also intentionally crafted questions and elicited responses that informed the jury of the fact that victim and defendant were incarcerated together. For instance, during the cross-examination of the victim, the People asked:

"Q. Before today, when was the last time that you saw Mr. Henderson? . . .

"A. Last time we came to court and recently since we been together.

"Q. You mean last Thursday, . . . downstairs in M-37?

"A. Yes . . .

"Q. Is that when you spoke to the defense attorney for the first time?

"A. Yes.

"Q. Is that when you told the defense attorney that the person that's in the cell closest to you, wasn't the one that did it?"

At another point in the trial, the People asked, "What do inmates . . . call an individual who . . . comes to court and testifies against another inmate?"

The victim forcefully denied that he had been intimidated. On cross-examination, he stated: "I want to say something. I want to—really want to know where you are leading with this. Because if you are making it seem like . . . Making it seem like

---

**1.** Testimony regarding the number of inmates present in the day room during the fight varied; one correction officer testified that there were between 8 and 14 inmates, and the victim testified that there were approximately 25 to 28 inmates.

**2.** One officer was 20 to 25 feet away; the other officer was 25 to 30 feet away.

**3.** The defendant is an African-American.

I'm scared. No. I'm not scared. If you been checking through all your paperwork, you will see how long I been locked up . . . If you could see, nobody is going to put pressure on [me]. I'm here for the reason because he wasn't the one. I'm not going to be scared of him or no man . . . I didn't have to come. I could have refused. *I refused court before."*

Nevertheless, during summation, the People stated, "[s]nitches get stitches." The People said, "This case is about [defendant's] arrogance and thinking that no one would be here to testify . . . against him. He got the victim to testify for him."

Defense counsel objected, and the court sustained the objection. Immediately thereafter, however, the People continued, "You don't always need a shank to exercise power over another person . . . It's a small community."[4]

After the People's summation, defense counsel moved for a mistrial on the ground that the People had implied that the defendant had forced or pressured the victim to testify for him. Defense counsel acknowledged that the court had stricken part of the summation in response to its objections but argued that this did not reverse the prejudice to the defendant. Defense counsel also objected to the People's reference to defendant's incarceration. The court denied the motion for a mistrial, and the defendant was convicted of attempted assault in the first degree.

On appeal, the People assert that the comments were appropriate because they were identifying grounds on which to question the victim's credibility. Unfortunately, there simply was no evidence of record that the defendant intimidated the victim and therefore, no good faith basis to question the victim's credibility.

The People also assert that they were responding to the defense summation, which asked, "Why in a room full of inmates, did not one inmate come forward to say that [the defendant] had anything to do with this?"

For the reasons set forth below, I would reverse and remand for a new trial because I believe that the defendant was substantially prejudiced by the People's improper comments. The People, by suggestion and insinuation only, created the distinct impression that the victim had lied in testifying that the defendant was not the assailant because the victim had been intimidated by the defendant. Yet, the People presented no evidence that anyone had intimidated the victim in any way. On the contrary, the victim explicitly testified that the defendant

---

4. Defense counsel did not object to this comment.

had absolutely nothing to do with the attack, and he emphatically denied being intimidated. In similar circumstances, this Court has granted new trials. (*See e.g. People v Lantigua*, 228 AD2d 213, 219 [1st Dept 1996] ["the prosecutor's numerous remarks that this was a case of 'intimidation', involving a witness who was 'afraid', are clearly contradicted by the evidence"; new trial granted]; *People v Norton*, 164 AD2d 343, 356 [1st Dept 1990], *affd* 79 NY2d 808 [1991] [new trial granted where prosecutor improperly argued that the defendant had threatened witness].) While the People contend that they were responding to the defense summation, this does not allow the People to make arguments that contradict the evidence. (*See generally People v Ashwal*, 39 NY2d 105, 109-110 [1976].)

Furthermore, when evaluating the impact of the People's misconduct, a determination as to whether the People persistently disregarded the court's instructions such that the People sidetracked the jury is a relevant inquiry. (*See People v Alicea*, 37 NY2d 601, 605 [1975].) Here, the People's improper comments persisted throughout the summation, even after the court sustained numerous objections.

In my view, it was highly prejudicial for the People to make comments with no evidentiary foundation in the record such as "You don't always need a shank to exercise power over another person" and "It's a small community." These comments informed the jury that the defendant was incarcerated with the victim and hence had an opportunity to influence the victim's testimony. Evidence of this prejudice is adequately demonstrated by the juror's post-trial comment that he thought that "the likelihood of undue influence was much greater" in light of the victim's and the defendant's incarceration together.

Further, the People's assertion that because the victim testified that he was *not* intimidated by the defendant means that he *was* intimidated by the defendant is not only preposterous in its Alice-in-Wonderland-type reasoning[5] but an obvious attempt by the People to evade their obligation to present evidentiary support for their argument. In their brief, the People state, "The very fact that [the victim] testified for the person who attacked him led to the reasonable inference that [the victim] had felt some pressure not to identify [the defendant]." However, the People's argument clearly presupposes that the defendant was the perpetrator and improperly places the burden of proof with him. (*See People v Harte*, 29 AD3d 475, 476 [1st Dept 2006].)

---

**5.** From Alice's Adventures in Wonderland : " 'When I use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what I choose it to mean' " (Lewis Carroll, Alice's Adventures in Wonderland [1865]).

I believe this was a close case, in which the jury's assessment of credibility was crucial: the victim's testimony was directly contrary to that of the correction officers and there was no admissible proof submitted to explain why either side had a reason to perjure themselves. In my view, the People's impermissible comments unfairly tipped the scales against the defendant, and so they cannot be viewed as harmless error.

Finally, the court's sustaining of the defense's objections to the People's comments did not eliminate the prejudicial effect of the comments especially in light of the People's persistence in making similarly improper comments during its summation. (*See People v Calabria*, 94 NY2d 519, 523 [2000] ["A court's instructions to a jury to disregard matters improperly brought to their attention cannot always assure elimination of the harm already occasioned" (internal quotation marks and citation omitted)].)