THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
CHARLES PAYNE, Also Known as NU NU, Appellant.

Fourth Department, February 5, 1993

APPEARANCES OF COUNSEL .

*William R. Lewis,* Lockport *(Robert Viola* of counsel), for appellant.

*Matthew J. Murphy, III, District Attorney* of Niagara County, Lockport *(Joseph Frazier* of counsel), for respondent.

## OPINION OF THE COURT

Военм, J.

The issue raised by this appeal is whether defendant was denied a fair trial because of prosecutorial misconduct.

In the spring of 1990, Lance Carter, who was in jail on pending burglary charges, contacted Detective John Chella of the Niagara Falls Police Department and made a deal to buy drugs from certain people named by Carter in exchange for a reduced sentence. Pursuant to that arrangement, Carter agreed to purchase cocaine from defendant, who, according to Carter, was his "friend". That transaction took place on May 24, 1990 and was monitored by Detective John Chella and Investigator Mark Driess by photo surveillance and by radio transmission from a body-wire on Carter. Carter was given $50 for the buy; he then went to the corner of 15th Street and Linwood Avenue where Driess observed Carter and defendant engage in a hand-to-hand exchange. Carter was observed by one or both officers from the time that he left Chella to the time that he returned, except for brief instances of about 10 seconds, when he could not be seen by either officer.

Defendant was indicted on one count each of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree. Defendant's first trial ended in a mistrial. According to defense counsel, the jury voted 11 to 1 for acquittal on all counts. At the second trial, defendant admitted selling a substance to Carter that he had represented as cocaine, but which was actually a mixture of candle wax, baking soda and Orajel, darkened by tea stains. Defendant was convicted on all counts and sentenced to three concurrent terms of incarceration, aggregating 2 to 6 years.

We begin with the by now familiar rubric that the function of the prosecutor is not merely to obtain a conviction. The prosecutor "[is] charged with the responsibility of presenting competent evidence fairly and temperately, not to get a con-

viction at all costs (see, e.g., *People v Bailey,* 58 NY2d 272; *People v Zimmer,* 51 NY2d 390; *United States v Modica,* 663 F2d 1173[, *cert denied* 456 US 989])" *(People v Mott,* 94 AD2d 415, 418).

That responsibility is not a meaningless truism; it is a paramount value. It is embedded in our sense of due process and fair play. Although our adversarial system of justice is not a game, it has rules, and it is unfortunate when a prosecutor, whose sworn duty it is to uphold those rules, plays fast and loose with them. Regrettably, that is what occurred here.

The prosecutor's course of inappropriate behavior began with his opening remarks and culminated in a summation that was deliberately designed to inflame the jury. For example, in his opening remarks the prosecutor stated:

"Now, Mr. Viola [defense counsel] mentioned to some of you in voir dire yesterday that this Indictment that accuses Mr. Payne of a crime means nothing. Well, that's not entirely true. The Judge will tell you it means nothing in terms of evidence in this trial. It does mean that he is accused and stands accused of a crime. Twenty-three people voted such upstairs.

"And let me also have you understand that there are other things that mean much less than this Indictment. Mr. Viola says one of those things is that the defendant denied the Indictment. Every case that goes to trial the defendant denied the indictment. We would not be here otherwise. So a denial of what is contained in here means less than this."

That was an obvious suggestion that 23 people "upstairs" had already made a preliminary evaluation of defendant's guilt and that defendant's denial of the accusations in the indictment "means less than this"; that is, defendant's denial of guilt had less weight than the indictment.

The prosecutor then continued down the same road by saying:

"[A]ll defendants have rights, and it's right for defendants to have rights. It's not right to sucker us into believing an untruthful version of the events which allows one to go back out into the neighborhood with the rest of us if they're guilty of a crime. If we're tricked here in the next couple of days, we all lose in the long run * * *

"Now, I don't have any idea what areas that the defense may attack or may try to tell you isn't what you're looking at,

but rest assured, will be something *[sic].* I would be astounded if they sat there in silence the whole time. My guess is that between the time that Officer Chella released Mr. Carter to the scene and the time that Officer Driess picks him up in his vision, I mean, there's about, they will tell you, about an eight to ten second gap of time * * * So you wait and see if I'm not right, they'll do something with these ten seconds. They'll say he bought from somebody else, it wasn't cocaine * * * [P]eople that commit crimes try to get away with them, ladies and gentlemen. That's not a big conspiracy, I know, but there is so little, so few gaps in this evidence that I can pretty much say they're going to have to say something about that because there's nothing left. They can't say anything about anything else. So you watch and see if something like that doesn't happen."

Based upon those remarks, defense counsel properly moved for a mistrial, but the trial court ruled that, although the prosecutor's remarks were improper, they were not of sufficient magnitude to warrant a mistrial and denied the motion. No request for curative instructions was made, and none were given.

The prosecutor's remarks were clearly improper. His statements concerning the supposed advantages that defendant had with respect to the criminal justice system conveyed the implication that defendant must be guilty. What was not implied was the offensive advice to the jury not to let the defendant "sucker us" and that "[i]f we're tricked here * * * we all lose". The prosecutor's message was that although the defendant has rights, those rights must be carefully measured because it is "us" against him. Finally, it was egregious error for the prosecutor to tell the jury that his case was so good that defendant would most likely attempt to offer proof in opposition. Defendant had no obligation to present any proof, and it was "absolutely improper" for the prosecutor to suggest otherwise *(People v Grice,* 100 AD2d 419, 422).

During the trial, the prosecutor improperly editorialized with respect to responses given by witnesses, and the court admonished him. The prosecutor also attempted to cross-examine defendant about prior felonies, and the court sustained defense counsel's objection *(see, People v Hammock,* 182 AD2d 1114). The record does not disclose whether inquiry into defendant's record had been precluded, but obviously some arrangement had been made regarding disclosure and that arrangement appears to have been violated.

The prosecutor's inappropriate behavior reached a regrettable climax in his summation. It went so far beyond the bounds of permissibility that defendant's right to a fair trial was destroyed. The prosecutor told the jury:

"Ladies and gentlemen, this is a story of a little minnow and a big fish, and when I'm finished, I think you'll see what I'm talking about here.

"I hope the evidence that you have heard here makes you angry and insulted to have heard such preposterous, ridiculous, absurd things that you were asked to believe * * * You got to be kidding me. You have got to be kidding me * * *

"Ladies and gentlemen, you don't—when you have to have your plumbing fixed, you go to a plumber. When you have to have your car fixed, you go to a mechanic. When the police are looking for somebody to assist them in drug bust, they don't go to the Catholic church. The story of the big fish and the little minnow, ladies and gentlemen, is just this in a word. And what is your common sense telling you here * * *

"[D]on't let Manuel Noriega go to go pick up some little small time punk * * *

"[The deal with Carter was necessary because] it's the only way we're going to try and get the big fish * * *

"Mr. Carter's a bad guy, he's the little minnow, the 20-year old punk that the police were willing to give up to get the big fish * * * If you can't sleep well at night return a guilty verdict in a case like this, then you'll never be comfortable, this is as good as it gets in real life * * *

"You need more than possibilities, folks, you need reasonable doubt. That's the duty you're talking about here. Drugs kill, washing machines don't. That's why [they] deal * * *

"That is the violent world, folks. They don't give cocaine away. They kill for it maybe. They don't it give away *[sic]*."

As if that were not enough, the prosecutor added that the reason defendant had not been arrested in five months was that he had been in jail. "[The prosecutor] may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one" *(Berger v United States,* 295 US 78, 88; *People v Mott, supra,* at 418).

Defense counsel made repeated objections during the sum-

mation, which were either not acted on or were overruled. He also moved for a dismissal or a mistrial because of the prosecutor's out-of-bounds summation. Those motions were consistently denied. The trial court's failure to rein in the prosecutor and take corrective action "seemingly put the court's imprimatur on [the prosecutor's improper remarks] in the eyes of the jury" *(People v Mott, supra,* at 419).

As even the People concede in their brief, "there is no question that [the] 'big fish' argument is improper, and is akin to the 'safe streets' argument which has been disapproved by the courts". Viewed in totality, we conclude that the prosecutor's summation was inflammatory and prejudicial. In his overzealous desire to get a conviction on the second trial of defendant, the prosecutor relentlessly appealed to the jurors' fears of a lawless drug culture and defendant's alleged major role in it.

The zeal to convict a malefactor is commendable, but our system of criminal justice imposes limits beyond which one may not go, whether deliberately or carelessly. They may not be trespassed with impunity. Summation is not "an unbridled debate in which the restraints imposed at trial are cast aside so that counsel may employ all the rhetorical devices at his command" *(People v Ashwal,* 39 NY2d 105, 109; *see also, People v Alicea,* 37 NY2d 601).

Reversal is mandated because of the substantial prejudice to defendant arising out of the prosecutor's misconduct and the failure of the trial court to take appropriate steps to dilute the effect of that conduct. Although the People's proof was sufficient, under the circumstances we do not measure its strength *(see, People v Alicea, supra; People v Steinhardt,* 9 NY2d 267).

Accordingly, defendant's conviction should be reversed and a new trial granted.

CALLAHAN, J. P., PINE, LAWTON and FALLON, JJ., concur.

Judgment unanimously reversed, on the law, and new trial granted.