OPINION OF THE COURT
Edgar G. Walker, J.
On January 14, 2007, Carolyn Vargas was stabbed to death at approximately 2:10 a.m. in an apartment located at 306 East 180th Street in Bronx County. Ronald Baker informed Detective Luis Pineiro, a detective who was assigned to investigate the matter, that he was in a bedroom in the apartment when he heard a loud thump, then he got up and went into another room where he observed Ms. Vargas lying on the floor in a pool of blood and defendant fleeing the apartment. Defendant was arrested and indicted for murder in the second degree and other related charges. Mr. Baker testified to essentially the same facts before the grand jury. In several interviews with defense counsel, Daniel Mentzer, Mr. Baker consistently informed Mr. Mentzer that he did not witness the incident but merely heard a thump while inside the bedroom and arose to find Ms. Vargas lying on the floor and defendant fleeing the apartment. On one occasion, Mr. Mentzer went with Mr. Baker to the apartment where the incident occurred and Mr. Baker showed Mr. Mentzer *809 where he was in the bedroom when the incident happened. The case was sent to this court for hearings and trial on September 13, 2011. Thereafter, the prosecutor provided Mr. Mentzer with an additional statement made by Mr. Baker to his probation officer wherein Mr. Baker again stated, in sum and substance, that on the night of the incident he was in his bedroom when he heard a thump, whereupon he left his bedroom and observed Ms. Vargas lying on the kitchen floor.
On October 4, 2011, after the parties made their opening statements, at defense counsel’s request, the prosecutor turned over a record of prior convictions, including the dates and sentences, of their main witness, Ronald Baker. While the prosecutor informed defense counsel that Mr. Baker had a prior manslaughter conviction in Virginia, he stated that he was not able to obtain any underlying facts surrounding this conviction because the records were sealed. On October 5, 2011, after defendant objected to the People’s introduction into evidence of 911 recordings, a hearing was held outside the presence of the jury to determine the admissibility of the recordings. Mr. Baker, who had not yet testified at trial, was called by the prosecutor to testify at this hearing. In contradiction to his previous recorded statements, his sworn testimony before the grand jury and his statements to Mr. Mentzer, Mr. Baker testified on cross-examination that he had seen defendant stab Ms. Vargas in the chest. When asked why he now claimed to have seen defendant stab Ms. Vargas, Mr. Baker stated that it was because the defendant had to take responsibility for what he had done.
A lengthy colloquy then took place wherein the prosecutor acknowledged that he had been aware for several weeks that Mr. Baker had changed his story and would testify at trial that he saw defendant stab and kill Ms. Vargas. Mr. Mentzer stated that he had no idea that Mr. Baker would testify that he saw defendant stab Ms. Vargas and that, had he known of this change in Mr. Baker’s version of events, he would have conducted jury selection and his opening statement in a different manner. Over the prosecution’s objection, this court granted defendant’s request for a mistrial. Defendant now moves for dismissal of the indictment based upon a Brady violation.
While the People acknowledge that “in retrospect, surprise to defendant could have been avoided by providing him the knowledge that Mr. Baker would testify at trial to having seen defendant’s stabbing of Ms. Vargas,” they contend that their failure to do so is not a Brady violation because this information is not *810 exculpatory. Additionally, the People assert that dismissal of the indictment is not warranted due to prosecutorial misconduct because “the People’s decision not to disclose that Mr. Baker had changed his story was motivated by an intent to secure defendant’s conviction,” not to provoke a mistrial. According to the People, the proper remedy is a new trial.
Under Brady, the People are required to disclose, in advance of trial, evidence which is favorable to the accused. (Brady v Maryland, 373 US 83 [1963].) Disclosure of such evidence must be made in time for the defense to use it effectively. (People v White, 178 AD2d 674 [1991].) Evidence that the defendant is entitled to is not limited solely to evidence which supports the defendant’s trial theory. It also includes evidence which would bear on trial strategy. (United States v Bagley, 473 US 667 [1985].) When reliability of a given witness may be dispositive of guilt or innocence, material evidence affecting that witness’s credibility constitutes exculpatory evidence. (Giglio v United States, 405 US 150 [1972].)
Here, the information that Mr. Baker had changed his story and would testify at trial that he saw defendant stab Ms. Vargas would bear not only on defendant’s trial strategy but also on the credibility of Mr. Baker, the People’s main witness in the case. As such, contrary to the People’s contention, this is Brady material which the People were required to disclose to defendant prior to trial.
The prosecutor’s contention that his failure to disclose was “motivated by an intent to secure defendant’s conviction” clearly indicates that he believed that the information would be favorable to the accused. Moreover, the disclosure of Mr. Baker’s statement to his probation officer at a time when the prosecutor knew but failed to disclose that Mr. Baker’s trial testimony would be diametrically opposed to that statement can only be taken as an attempt to mislead the defendant. The prosecutor’s conduct constitutes more than a mere failure to disclose; it amounts to an affirmative act of deceit.
Not only is the prosecutor’s decision not to disclose the fact that Mr. Baker changed his story in violation of Brady, it is antithetical to the unique role of a prosecutor in our criminal justice system.
As the Supreme Court explained in Berger v United States (295 US 78, 88 [1935]),
*811 “[the prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. . . . He may prosecute with earnestness and vigor — indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones.”
This interest is manifest in the special ethical rules and standards promulgated for prosecutors, central to which is the duty to seek justice and not merely convict. (See ABA Standards for Criminal Justice, Prosecution Function, standard 3-1.2 [c] [3d ed 1993]; see also Rules of Professional Conduct [12 NYCRR 1200.0] rule 3.8; Abbe Smith, Can You Be A Good Person And A Good Prosecutor?, 14 Geo J Legal Ethics 355.) A prosecutor has the responsibility of a minister of justice, and not simply that of an advocate. (See ABA Standards for Criminal Justice, Prosecution Function, standard 3-1.2 [b]; see also NY St Bar Assn, Rules of Professional Conduct rule 3.8, Comment 1; Bruce Green, Why Should Prosecutors “Seek Justice?,” 26 Fordham Urb LJ 607, 612-614, 625-637.) A prosecutor’s responsibilities include a heightened duty to ensure the fairness of the process by which a criminal conviction is obtained as well as a duty to avoid the public perception that criminal proceedings are unfair. (Bruce Green, Why Should Prosecutors “Seek Justice?,” 26 Fordham Urb LJ at 634-636.) Given that a prosecutor’s paramount obligation is to the public, “he must never lose sight of the fact that a defendant, as an integral member of the body politic, is entitled to a full measure of fairness.” (People v Zimmer, 51 NY2d 390, 393 [1980].)
Those responsibilities are embedded in our sense of due process and fair play. “Although our adversarial system of justice is not a game, it has rules, and it is unfortunate when a prosecutor, whose sworn duty it is to uphold those rules, plays fast and loose with them.” (People v Payne, 187 AD2d 245, 247 [1993].) Unfortunately, that is what happened here.
Independent of Brady, these ethical rules and standards expressly require prosecutors to disclose to the defense all favorable evidence. In this regard, ABA standard 3-3.11 (a) states:
“A prosecutor should not intentionally fail to make timely disclosure to the defense, at the earliest *812 feasible opportunity, of the existence of all evidence or information which tends to negate the guilt of the accused or mitigate the offense charged or which would tend to reduce the punishment of the accused.”
Similarly, rule 3.8 (b) of the Rules of Professional Conduct states:
“A prosecutor ... in criminal litigation shall make timely disclosure to counsel for the defendant . . . of the existence of evidence or information known to the prosecutor . . . that tends to negate the guilt ' of the accused, mitigate the degree of the offense, or reduce the sentence, except when relieved of this responsibility by a protective order of a tribunal.”
Evidence or information which impugns the credibility of the People’s principal witness against the defendant tends to negate his guilt and, therefore, these rules obligate the prosecutor to disclose this material to the defense as soon as possible.
Moreover, the trial of a criminal charge
“should not be a sporting event where each side remains ignorant of the facts in the hands of the adversary until events unfold at trial. Broader pretrial discovery enables the defendant to make a more informed plea decision, minimizes the tactical and often unfair advantage to one side, and increases to some degree the opportunity for an accurate determination of guilt or innocence.” (People v Copicotto, 50 NY2d 222, 226 [1980].)
Various committees of experts commissioned to study criminal discovery have concluded that expedited and liberalized discovery is an essential ingredient to improving criminal procedure. Expedited and liberalized discovery promotes fairness and efficiency by: providing a speedy and fair disposition of charges, whether by diversion, plea or trial; providing the accused with sufficient information to make an informed plea; permitting thorough trial preparation and minimizing surprise, interruptions and complications during trial; avoiding unnecessary and repetitious trials by identifying and resolving prior to trial any procedural, collateral, or constitutional issues; eliminating as much as possible the procedural and substantive inequities among similarly situated defendants; and saving, time, money, judicial resources and professional skills by minimizing paperwork, avoiding repetitious assertions of issues and reducing the number of separate hearings. (See Report of the Advi *813 sory Committee on Criminal Law and Procedure to the Chief Administrative Judge of the Courts of the State of New York [Jan. 2008]; see also ABA Standards for Criminal Justice, Discovery, standard § 11-1.1 [3d ed 1996]; National Advisory Commission on Criminal Justice Standards and Goals, Courts, standard 4.9 [1973].)
Here, the prosecutor’s “trial by ambush” tactic resulted in both unfairness and inefficiency. Defendant was deprived of the opportunity to be thoroughly prepared for trial. As a result, an additional hearing, additional discovery and a new trial are required. Needless to say, this case does not exemplify an efficient use of time, money or judicial resources, but rather, just the opposite.
Even more troubling in this case is that the prosecutor had every reason to believe that Mr. Baker would make perjurious statements at trial given that his changed version of events was inconsistent with every prior statement made by him to the police, his probation officer and Mr. Mentzer, as well as his sworn testimony before the grand jury. On the other hand, if the prosecutor actually believed Mr. Baker’s changed story to be true, then he would have known that Mr. Baker committed perjury before the grand jury since he admits that this changed testimony contradicts Mr. Baker’s grand jury testimony. (See Penal Law § 210.20.)* In either case, the prosecutor’s failure to disclose this information is inexcusable. (See Mooney v Holohan, 294 US 103 [1935].)
It is fundamentally unfair and a clear violation of a defendant’s right to due process for a prosecutor to present testimony that he knew, or should have known, was perjured. (Id.) “Such a contrivance by the state to secure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation.” (Id. at 112.) The same is also true when the state, “although not soliciting false evidence, allows it to go uncorrected when it appears.” (See Napue v Illinois, 360 US 264, 269 [1959].)
However deplorable the court finds the prosecutor’s conduct, dismissal is not an appropriate sanction, as society *814 should not be punished for the misconduct of the prosecutor. In addressing such violations, “the overriding concern must be to eliminate any prejudice to the defendant while protecting the interests of society.” (People v Kelly, 62 NY2d 516, 520 [1984].)
Balancing these concerns, the court finds the following sanctions are appropriate: The People are directed to seek to obtain and turn over to defendant, as soon as possible, all police reports, District Attorney write-ups, accusatory instruments and prison disciplinary records for all of Mr. Baker’s prior convictions, including but not limited to his manslaughter conviction in Virginia. While these documents are not technically discoverable under CPL article 240, this is an appropriate sanction to rectify the damage done to defendant by the prosecutor’s misconduct.
In addition, this matter shall be set down for a hearing before this court to obtain, pretrial, the testimony of Ronald Baker regarding the death of Carolyn Vargas as well as the underlying facts surrounding all of his prior convictions, including his manslaughter conviction in Virginia. Again, while pretrial depositions are not normally available in criminal proceedings, given the conflicting accounts previously given by Mr. Baker under oath, and the egregious conduct of the prosecutor in suppressing this information, it is appropriate under these particular circumstances to ascertain exactly what this witness will testify to at trial.

 There is no indication that the prosecutor advised Mr. Baker to consult an attorney before calling him as a witness to give contradictory testimony under oath on a clearly material issue. Rather, it appears that he has granted Mr. Baker immunity from prosecution for his perjury, something heretofore unheard of by this court.