■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KOHRELLE BRISCO, Appellant. [45 NYS3d 474]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Aloise, J., at the first trial; Zayas, J., at the second trial and at sentence), rendered January 9, 2014, convicting him of criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree, upon a jury verdict at the second trial, and resisting arrest, upon a jury verdict at the first trial, and imposing sentence.

Ordered that the judgment is reversed, on the law, and the matter is remitted to the Supreme Court, Queens County, for a new trial.

The defendant's contention that the evidence was legally insufficient to support his convictions of criminal possession of a weapon in the second degree (see Penal Law § 265.03 [3]) and criminal possession of a weapon in the third degree (see Penal Law § 265.02 [1]) is unpreserved for appellate review (see CPL 470.05 [2]; People v Hawkins, 11 NY3d 484, 493 [2008]; People v McClymont, 126 AD3d 812, 813 [2015]). In any event, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621 [1983]), we find that it

was legally sufficient to establish that the defendant possessed a firearm outside his home and place of business (*see People v McClymont*, 126 AD3d at 813) and that he had been previously convicted of a felony (*see People v Williams*, 94 AD3d 779, 780 [2012]). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]; *People v Danielson*, 9 NY3d 342 [2007]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d 383 [2004]; *People v Bleakley*, 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdicts of guilt on the counts of criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree were not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]).

However, the cumulative effect of the prosecutor's improper comments during summation at the second trial requires a new trial. "[I]n summing up to the jury, [the prosecutor] must stay within 'the four corners of the evidence' and avoid irrelevant and inflammatory comments which have a tendency to prejudice the jury against the accused" (*People v Bartolomeo*, 126 AD2d 375, 390 [1987], quoting *People v Ashwal*, 39 NY2d 105, 109 [1976]).

Here, during that summation, the prosecutor directly attacked defense counsel's role and his integrity. Specifically, the prosecutor raised a hypothetical that bore no relation to the evidence in the case and then suggested what defense counsel would have argued with respect to that irrelevant hypothetical, in effect, implying that the defense arguments were the product of expediency. This tactic invited the jury to reject defense counsel's argument not on the merits, but merely because it was raised by defense counsel. We strongly disapprove of this attack on the legitimacy of defense counsel's role (*see People v Baum*, 54 AD3d 605, 606 [2008]; *People v Rivera*, 116 AD3d 371, 374 [1986]). The prosecutor also improperly referenced facts not in evidence in order to call for speculation by the jury (*see People v Brown*, 256 AD2d 414, 416 [1998]) and misstated critical testimony provided by a defense witness, alleging that certain facts were "undisputed" when in fact they were disputed (*see People v Spann*, 82 AD3d 1013, 1015 [2011]; *People v Brown*, 256 AD2d at 416).

The prosecutor improperly appealed to the jury's sympathy and generalized fear of crime by asserting that the defendant possessed a loaded gun while families and children from the

"20 residential buildings" were "everywhere" having "cookouts" and celebrating the Fourth of July, and that because the various police officers "did their jobs," "fortunately, nothing happened." These comments implied to the jury that the defendant intended to commit crimes with which he was not charged (*see People v Hendrickson*, 73 AD2d 676, 676 [1979]). Furthermore, immediately upon praising the police officers who "did their jobs," the prosecutor turned to the jury and advised that "[n]ow it's your turn to uphold your oaths as jurors and do your jobs" by finding the defendant guilty. This type of "safe streets" argument is inflammatory and has repeatedly been disapproved by the courts (*see People v Jackson*, 199 AD2d 535, 535 [1993]; *People v Payne*, 187 AD2d 245, 250 [1993]).

The prosecutor also compared the defendant's in-court demeanor and appearance to how he appeared on the night of his arrest in order to argue that the jury should not be fooled into considering him a "gentleman" (*see People v Nunez*, 74 AD2d 805, 806 [1980]). The prosecutor went so far as to point to the defendant's precinct photo and stated that his appearance there represented his "true colors."

We find that the cumulative effect of these improper comments deprived the defendant of a fair trial (*see People v Calabria*, 94 NY2d 519, 522 [2000]; *People v Crimmins*, 36 NY2d 230, 237-238 [1975]; *People v Spann*, 82 AD3d at 1016).

The defendant's remaining contention is without merit. Balkin, J.P., Dickerson, Cohen and Brathwaite Nelson, JJ., concur.